**AFFIRM; and Opinion Filed November 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00892-CV

**BARBARA PINKUS, Appellant**
**V.**
**HARTFORD CASUALTY INSURANCE COMPANY, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-02050-2013**

## OPINION

Before Justices Fillmore, Stoddart, and O'Neill[1]
Opinion by Justice Fillmore

Barbara Pinkus appeals the trial court's summary judgment in favor of Hartford Casualty Insurance Company. In two issues, Barbara argues the trial court's summary judgment in favor of Hartford, a workers' compensation insurance carrier, was erroneous because her husband, Ron Pinkus, was in the course and scope of his employment at the time he was injured in a motor vehicle accident, and if Barbara is the prevailing party on appeal, she is entitled to an award of attorney's fees.[2] We affirm the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice Fifth District Court of Appeals, Retired, sitting by assignment.

[2] Given their common surname, we will refer to Barbara, Ron, and their son, Brett Pinkus, by their first names for clarity.

**Procedural Background**

Barbara filed a beneficiary claim for workers' compensation benefits with the Texas Department of Insurance, Division of Workers' Compensation (DWC), which Hartford, the workers' compensation insurance carrier of Ron's employer, denied. After a DWC contested case hearing, a hearing officer determined Ron was in the course and scope of his employment when he sustained injury in a January 9, 2012 motor vehicle accident, and Ron had disability for the period beginning January 10, 2012, and continuing through the date of Ron's death on August 1, 2012. Hartford appealed, but the DWC appeals panel affirmed the hearing officer's decision. The DWC's decision and order includes the following as "Background Information":

> Ron . . . was a 64-year-old Product Development Team Leader for Employer, who was sent to Dallas from the home office in Raleigh, North Carolina for a three day business trip to meet with customers and plan for opening a Dallas office. All transportation, meals and lodging expenses for the trip were paid by Employer. [Ron] stayed at the Westin Galleria Hotel in Dallas. After working at the office in the Galleria Tower adjacent to the hotel on January 9, 2012, [Ron] had arranged to meet his son, Brett Pinkus, who lived in Dallas, for dinner at a restaurant. At about 6:45 pm, [Ron] was seriously injured in an automobile accident which occurred about one-half mile short of the restaurant, and 11.6 miles from the hotel.
>
> The facts of this case bring it within the "continuous coverage" doctrine which provides coverage 24 hours per day for employees sent out of town overnight on business by Employer. Travel for meals during a business trip is a covered part of the trip. An exception to such coverage has been recognized in cases where an employee deviates from the business purpose of a trip for purely personal reasons. Examples of exceptions include APD 101035 in which the employee was injured while driving to another city 40 miles distant for dinner, and APD 101035 in which the employee traveled to another city during his business trip to have dinner, drink alcohol, play pool, and watch sports on television with a friend. There is no cited case where a trip of 12 miles to a restaurant within a major metropolitan area such as Dallas has been held to be a deviation from the business purpose of the trip. The fact that the son was to meet [Ron] for dinner does not remove the activity from the scope of covered activities allowable during a business trip such as sleeping and eating.
>
> [Ron] was rendered quadriplegic by his injuries sustained in the motor vehicle accident, and died due to his injuries on August 1, 2012. [Hartford] does not dispute that this would be a period of disability if the injury is found to be compensable.

The DWC's decision and order includes the following findings of fact:

3.  [Ron]'s injury of January 9, 2012 was sustained during a business trip to Dallas, Texas of several days duration from his home base in North Carolina for which transportation, meals and lodging were furnished by [his employer].

4.  [Ron] sustained serious bodily injury on January 9, 2012 in a motor vehicle accident while driving from his office in the Dallas Westin Galleria hotel at about 6:45 pm to have dinner at a restaurant in Dallas.

5.  Due to his injury sustained on January 9, 2012, [Ron] was unable to obtain or retain employment at wages equivalent to his preinjury wage for the period beginning January 10, 2012 and continuing through August 1, 2012.

It was the appeals panel's decision that Ron sustained a compensable injury on January 9, 2012, and suffered disability for the period beginning January 10, 2012, and continuing through August 1, 2012.

Hartford challenged the DWC appeals panel's final decision by filing a petition for judicial review in the trial court. *See* TEX. LAB. CODE ANN. § 410.301 (West 2015) (judicial review of final decision of appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits shall be conducted as provided by this subchapter); *Davis v. Tex. Mut. Ins. Co.*, 443 S.W.3d 260, 263 (Tex. App.—Dallas 2014, pet. denied). Section 410.302(b) of the labor code limits judicial review to "issues decided by the appeals panel and on which judicial review is sought," and the pleadings "must specifically set forth the determinations of the appeals panel by which the party is aggrieved." TEX. LAB. CODE ANN. § 410.302(b) (West 2015); *Davis*, 443 S.W.3d at 263. If a party seeks review of a final DWC appeals panel decision regarding "compensability or eligibility for or the amount of income or death benefits," the trial court applies a modified de novo standard of review. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 253 (Tex. 1999); *Davis*, 443 S.W.3d at 266; *see also* TEX. LAB. CODE ANN. § 410.304(b) (West 2015) (in trial to court without jury, court in rendering its

judgment on issue regarding compensability or eligibility for, or amount of, income or death benefits shall consider decision of appeals panel); *State Office of Risk Mgmt. v. Joiner*, 363 S.W.3d 242, 247 (Tex. App.—Texarkana 2012, pet. denied) (under modified de novo standard of review, trial court is informed of appeals panel's decision but is not required to accord that decision any particular weight). The party appealing the final decision of the DWC appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits bears the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. § 410.303 (West 2015); *see also Transcont'l Ins. Co. v. Crump*, 330 S.W.3d 211, 214 (Tex. 2010); *Davis*, 443 S.W.3d at 266. Judicial review of the appeals panel's decision "is limited to the issues that were before the Commission appeals panel; however, the fact finder does not simply review the appeals panel decision for reasonableness, but decides the issues independently based on a preponderance of the evidence." *See Sec. Nat'l Ins. Co. v. Farmer*, 89 S.W.3d 197, 200 (Tex. App.—Fort Worth 2002, pet. denied).

Hartford pleaded it is aggrieved "by the following determinations and all supporting conclusions of law and findings of fact":

1.      The Employee [Ron] sustained a compensable injury on January 9, 2012;

2.      The Employee [Ron] had disability for the period beginning January 10, 2012 and continuing through August 1, 2012.

Hartford filed a traditional motion for summary judgment, asserting there is no genuine issue of material fact that Ron, who was driving to have dinner with his son at the time of the January 9, 2012 motor vehicle accident, was not in the course and scope of his employment. *See* TEX. R. CIV. P. 166a(c). Barbara filed a no-evidence motion for summary judgment, contending there is no evidence that Ron was not in the course and scope of his employment at the time of the motor vehicle accident, *see* TEX. R. CIV. P. 166a(i), and a traditional motion for summary judgment contending that, viewing the evidence in the light most favorable to Hartford, the evidence

–4–

establishes as a matter of law that Ron was in the course and scope of his employment at the time of the motor vehicle accident. *See* TEX. R. CIV. P. 166a(c).

The trial court granted Hartford's motion for summary judgment. Barbara's motion for new trial was overruled by operation of law, and this appeal followed.

## Factual Background[3]

Ron was a resident of North Carolina, and employed as a Developmental Team Leader by JVL Ventures. Ron's employer planned to open a branch office in Dallas, Texas, and Ron traveled to Dallas in early December 2011 to evaluate potential office locations. In January 2012, Ron again traveled to Dallas for a three-day business trip. The office where Ron worked was located near the Galleria Westin Hotel, where he lodged while in Dallas on business.

The employer's 2011 Travel Expense Policy indicates that employees are reimbursed for actual meal expenses with a maximum reimbursement not to exceed sixty dollars per day. The Travel Expense Policy states that if a spouse or guest accompanies an employee on a business trip, but is not participating as a business associate, the employer will reimburse the employee as though the employee was traveling alone, and expenses for the spouse or guest should be noted by the employee on expense reports and deducted from the employee's reimbursable charges. Ron was required to obtain pre-approval for a business meal or client-entertainment expense.

Ron maintained routine work hours while in Dallas for business. Ron completed his work assignments around 5:42 p.m. on January 9, 2012. Ron's calendar did not reflect any work-related appointments scheduled after his regular work hours on January 9, 2012, and he had not obtained prior approval for a business or client-entertainment meal. In his affidavit, Bala Ranganathan, Ron's direct supervisor, attested that after Ron completed his work on January 9, 2012, he was on personal time and was free to spend the evening as he saw fit. To the best of

---

[3] This factual background is taken from evidence relied upon by the parties in their motions for summary judgment.

Ranganathan's knowledge, Ron was not traveling in furtherance of the affairs of his employer after his regular work hours on January 9, 2012.

Brett testified at the DWC contested case hearing that he and Ron had spoken early in the day of January 9, 2012, and planned to meet for dinner. They discussed meeting at the Lovers Pizza restaurant near Mockingbird Lane, because the restaurant location was close to Brett's home and convenient for Brett. They had not confirmed whether they were to meet at the restaurant. At approximately 6:00 p.m., Brett left a voice-mail message on Ron's phone that he would meet Ron at the Lovers Pizza restaurant, but Brett did not receive a return telephone call or voice-mail message from Ron.

At 6:43 p.m., Ron was involved in a motor vehicle accident at the intersection of Mockingbird Lane and Briar Creek Lane, eleven miles from the Dallas business office at which Ron was working. Ron had passed other Lovers Pizza restaurant locations and the Lovers Pizza restaurant at which he and Brett planned to eat in reaching the accident location. The accident occurred between the Lovers Pizza location where Ron and Brett planned to eat and Brett's home (four-tenths of a mile east of the Lovers Pizza restaurant and one-half mile southwest of Brett's home).

Barbara spoke with Brett after Ron was injured in the motor vehicle accident. Brett told her that he and Ron had made plans to meet for dinner, but had not determined whether they would meet at Brett's home or at the Lovers Pizza restaurant. According to the DWC Benefit Review Conference Report, it was Barbara's position that Ron was in route to Brett's home when the accident occurred, and it was Hartford's position that Ron was on the way to Brett's home to meet him for dinner at the time of the motor vehicle accident. Barbara, who had not traveled with Ron to Dallas on this business trip, testified at the DWC contested case hearing that Ron was reimbursed by his employer for his hotel, rental car, and meals while on business travel,

and that when dining with Brett, Ron's employer would pay for Ron's meal and Brett would pay for his own meal.

The injury Ron sustained in the January 9, 2012 motor vehicle accident rendered him quadriplegic. On August 1, 2012, he died from his injuries sustained in the accident.

### Analysis

The Texas Workers' Compensation Act (the Act) provides for employee compensation when injuries "arise[ ] out of and in the course and scope of employment for which compensation is payable under [the Act]." TEX. LAB. CODE ANN. § 401.011(10) (West 2015); *see Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 518 (Tex. 2007); *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 627 (Tex. 1981) (essential element for recovery of workers' compensation benefits is that injury was sustained in course of employment). In this case, the disputed issue is whether Hartford established there is no genuine issue of material fact that Ron was not in the course and scope of his employment when he was injured in the January 9, 2012 motor vehicle accident. Barbara contends the trial court erred by concluding Ron was not in the course and scope of his employment at the time of his injury and by granting summary judgment in favor of Hartford on that issue.

*Standards of Review and Burden of Proof*

"It is now settled that the summary judgment procedure in general applies to Workmen's Compensation cases." *Bullock v. Tex. Emp'rs Ins. Ass'n*, 254 S.W.2d 554, 556 (Tex. Civ. App—Dallas 1952, writ ref'd); *see also Fowler v. Tex. Emp'rs Ins. Ass'n*, 237 S.W.2d 373, 375 (Tex. Civ. App.—Fort Worth 1951, writ ref'd) (summary judgment available in case where there can be no recovery if injury was not received in course of employment; if, as a matter of law, injury was not received in course of employment, it would be useless procedure to try other issues in case). We review a trial court's grant of summary judgment de novo. *SeaBright Ins. Co. v.*

*Lopez*, 465 S.W.3d 637, 641 (Tex. 2015). The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009) (no-evidence motion for summary judgment); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985) (traditional motion for summary judgment). With respect to a traditional motion for summary judgment, the movant has the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *SeaBright Ins. Co.*, 465 S.W.3d at 641. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310.

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *See SeaBright Ins. Co.*, 465 S.W.3d at 641; *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Nixon*, 690 S.W.2d at 548–49. We credit evidence favorable to the nonmovant if a reasonable fact-finder could, and we disregard evidence contrary to the nonmovant unless a reasonable fact-finder could not. *SeaBright Ins. Co.*, 465 S.W.3d at 641; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310. When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *SeaBright Ins. Co.*, 465 S.W.3d at 641–42.

*Applicable Law*

An insurance carrier is liable for compensation for an employee's injury under the Act if "the injury arises out of and in the course and scope of employment." TEX. LAB. CODE ANN. § 406.031(a)(2) (West 2015). The provisions of the Act are liberally construed "to carry out the Legislature's evident purpose of compensating injured workers and their dependents." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 652 (Tex. 2004).

"Course and scope of employment" means "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." TEX. LAB. CODE ANN. § 401.011(12). The term "course and scope of employment" does not include:

(A) transportation to and from the place of employment unless:

(i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

(ii) the means of the transportation are under the control of the employer; or

(iii) the employee is directed in the employee's employment to proceed from one place to another place; or

(B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:

(i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and

(ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

*Id.*

"The first step [in determining whether an activity is in the course and scope of employment] requires determining whether the activity (1) originates in the employer's work, business, trade, or profession and (2) furthers the employer's affairs." *Am. Cas. Co. of Reading, Pa. v. Bushman*, No. 04-14-00685-CV, 2015 WL 4934174, at *4 (Tex. App.—San Antonio Aug. 19, 2015, no pet. h.); *see also SeaBright Ins. Co.*, 465 S.W.3d at 642. For an employee's injury to be considered sustained in the course and scope of employment, it must (1) relate to or originate in the employer's business, and (2) occur in the furtherance of the employer's business. *Davis*, 443 S.W.3d at 267; *see also* TEX. LAB. CODE ANN. § 401.011(12). Both elements must be satisfied in order for an employee's injury to have occurred in the "course and scope of employment." *Deatherage v. Int'l Ins. Co.*, 615 S.W.2d 181, 182 (Tex. 1981); *Davis*, 443 S.W.3d at 267.

"If these two elements are satisfied, then the activity is in the course and scope of employment unless one of section 401.011(12)'s exclusions applies." *Bushman*, 2015 WL 4934174, at *4; *see also* TEX. LAB. CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645. Therefore, the second step in determining whether an activity is in the course and scope of employment is to determine whether one of the two exclusions of section 401.011(12) applies: the "coming and going" exclusion of section 401.011(12)(A) or the "dual-purpose travel" exclusion of section 401.011(12)(B). *Bushman*, 2015 WL 4934174, at *4; *see also* TEX. LAB. CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645 (even if employee is engaged in actions that originate in and further the employer's business at the time of injury, employee may not be acting in the course and scope of his employment if his actions fall within the statutory exclusion). "The two exclusions are mutually exclusive; that is, if the 'coming and going' rule [of section 401.011(12)(A)] applies, then the 'dual purpose travel' exclusion [of section 401.011(12)(B)] does not, and vice versa." *Bushman*, 2015 WL 4934174,

at *4. "If an exclusion applies, then the employee's activity is not in the course and scope of employment unless an exception to the exclusion applies." *Id.*; *see also* TEX. LAB. CODE ANN. § 401.011(12)(A), (B). Therefore, the third step in determining whether an activity is in the course and scope of employment is to determine whether an exception to the exclusion applies under section 401.011(12)(A) or (B). *Bushman*, 2015 WL 4934174, at *4; *see also* TEX. LAB. CODE ANN. § 401.011(12)(A), (B).

<u>Course and Scope of Employment</u>

Barbara contends that because Ron had traveled to Dallas on a business trip, the "continuous coverage" rule applied and Ron was in the course and scope of his employment at the time of his injury. On the specific facts of this record, we must disagree.

Under the "continuous coverage" rule, "an employee whose work entails travel away from the employer's premises [is] in the course of his employment when the injury has its origin in a risk created by the necessity of sleeping or eating away from home, except when a distinct departure on a personal errand is shown." *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 293 (Tex. 1965); *see N. River Ins. Co. v. Purdy*, 733 S.W.2d 630, 632–33 (Tex. App.—San Antonio 1987, no writ) ("test for determining whether an injury was received during the course of employment when the injury was suffered by an employee whose employer requires him to travel is whether the injury 'has its origin in a risk created by the necessity of sleeping or eating away from home . . . .'" (quoting *Shelton*, 389 S.W.2d at 293)). An insurance carrier is not liable for compensation if the injury to an employee arose out of "voluntary participation in an off-duty recreational, social, or athletic activity that did not constitute part of the employee's work-related duties, unless the activity is a reasonable expectancy of or is expressly or impliedly required by the employment." TEX. LAB. CODE ANN. § 406.032(1)(D) (West 2015).

–11–

The parties do not dispute that on January 9, 2012, Ron was in Dallas on a business trip and had worked a full business day at an office near the hotel at which he was staying. Ron's transportation, lodging, and reasonable meal expenses were paid by his employer. After working normal business hours at his employer's Dallas office, Ron ceased working at around 5:42 p.m. He had not obtained prior approval for a business or client entertainment meal, and his calendar did not reflect any work-related appointment that evening. The summary-judgment evidence is uncontroverted that during the evening of January 9, 2012, Ron was on personal time and free to spend the evening as he saw fit. Ron made plans with his son, Brett, to have a personal, social dinner together. The plans had not been confirmed as to whether they were to meet at Brett's home or the Lovers Pizza location on Mockingbird Lane near Brett's home. The Lovers Pizza location at which Ron and Brett planned to eat was chosen for Brett's convenience due to the proximity of the restaurant to Brett's home. Ron sustained serious injury in a motor vehicle accident at 6:43 p.m. The accident location is between the Lovers Pizza restaurant where Ron and Brett planned to eat and Brett's home; it is four-tenths of a mile east of Lovers Pizza and one-half mile southwest of Brett's home. The accident occurred eleven miles from the Dallas business office at which Ron had been working. Ron passed other Lovers Pizza locations in route to have dinner with Brett at the Lovers Pizza restaurant on Mockingbird Lane. Even viewing the evidence in the light most favorable to Barbara, Ron's travel at the time of the accident was to accommodate a personal visit and meal with his son; Ron's business trip to Dallas merely placed him in a position to take advantage of an opportunity for a "distinct departure" on a "personal errand." *See Shelton*, 389 S.W.2d at 293; *see also Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 627 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd) (nature of inquiry into course and scope of employment is "unavoidably fact-specific"). Thus, with regard to the first step in determining whether an activity is in the course and scope of employment, we

–12–

conclude the summary judgment evidence establishes there is no genuine issue of material fact that Ron's activity at the time of his injury did not originate in and was not in furtherance of his employer's business affairs, and the trial court did not err in granting summary judgment in favor of Hartford. *See Bushman*, 2015 WL 4934174, at *4.

Dual Purpose Travel

An exclusion from "course and scope of employment" for "dual purpose" travel is contained in section 401.011(12)(B) of the labor code. *See* TEX. LAB. CODE ANN. § 401.011(B) ("course and scope of employment" does not include travel by employee in furtherance of affairs or business of employer if the travel is also in furtherance of personal or private affairs of employee). There are two statutory exceptions to the dual purpose travel exclusion from "course and scope of employment." *See* TEX. LAB. CODE ANN. § 401.011(12)(B)(i) (dual purpose travel exclusion from "course and scope of employment" does not apply if travel to place of occurrence of injury would have been made even had there been no personal or private affairs of employee to be furthered by the travel and the travel would not have occurred had there been no affairs or business of employer to be furthered by the travel). Barbara argues that, because the overall purpose of Ron's trip to Dallas was in the furtherance of the business of his employer, there was a business-purpose component to his travel at the time he was on the personal, social errand of meeting his son for dinner, and, therefore, Ron was engaged in "dual-purpose travel." *See* TEX. LAB. CODE ANN. § 401.011(12)(B); *SeaBright Ins. Co.*, 465 S.W.3d at 645 (Act governs compensability of injuries sustained by an employee while traveling for both personal and business purposes, or "dual-purpose travel"). Because we have concluded the summary judgment evidence establishes Ron was not in the course and scope of his employment at the time of his injury, we reach neither the second step of the analysis concerning applicability of the dual purpose travel exclusion from "course and scope of employment" nor the third step of the

–13–

analysis concerning applicability of an exception to that exclusion. *See Bushman*, 2015 WL 4934174, at \*4; *see also* TEX. LAB. CODE ANN. § 401.011(12)(A), (B); *SeaBright Ins. Co.*, 465 S.W.3d at 645.

## *Conclusion*

On the specific facts of this case, the travel in which Ron was engaged at the time of his tragic injury was not so related to his work that it can properly be concluded his injuries originated in and were in furtherance of his employer's business. The summary judgment evidence established there is no genuine issue of material fact that Ron was not in the course and scope of his employment at the time of his injury, and the trial court did not err in granting summary judgment in favor of Hartford. We resolve Barbara's first issue against her.

## Attorney's Fees

In a second issue, Barbara contends that if she prevails on her first issue, the trial court should award her attorney's fees pursuant to section 408.221(c) of the labor code. Under section 408.221(c), an insurance carrier unsuccessfully seeking judicial review of an adverse decision of the DWC appeals panel regarding compensability or eligibility for, or the amount of, income or death benefits is liable for reasonable and necessary attorney's fees incurred by the prevailing claimant as a result of the insurance carrier's appeal. TEX. LAB. CODE ANN. § 408.221(c) (West 2015).[4] Having resolved Barbara's first issue against her, she is not the prevailing party in Hartford's appeal of the DWC appeals panel's final decision. Accordingly, we resolve Barbara's second issue against her.

---

[4] Hartford contends Barbara's conditional issue on appeal relating to attorney's fees was never presented to, or ruled on by, the trial court, and Barbara has not preserved this complaint. We note Barbara filed a counterclaim seeking recovery of attorney's fees under section 408.221(c) of the labor code, and the trial court's final judgment denies all relief not granted therein.

**Conclusion**

Having resolved Barbara's issues against her, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Stoddart, J., concurring

140892F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARBARA PINKUS, Appellant

No. 05-14-00892-CV      V.

HARTFORD CASUALTY INSURANCE
COMPANY, Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas,
Trial Court Cause No. 199-02050-2013.
Opinion delivered by Justice Fillmore,
Justices Stoddart and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Hartford Casualty Insurance Company recover its costs of this appeal from appellant Barbara Pinkus.

Judgment entered this 5th day of November, 2015.